IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kimberly Smith,                                    Case No. 3:20-CV-01992-JGC

          Plaintiff,

    v.                                         **ORDER**

Time Staffing, Inc. *et al.*,

          Defendants.


     This is an employment discrimination case. Plaintiff Kimberly Smith worked for

Defendant Time Staffing, Inc. from May 17, 2017, until her termination on February 14, 2020.

She claims Defendant terminated her because she is African American and a woman. She brings

claims under Ohio Rev. Code § 4112.02 for race and gender discrimination. She also claims that

the Defendant's owner, Jeffrey Doepker, created a hostile work environment based on race and

gender.[1]

     Pending is Defendant's Motion for Summary Judgment (Doc. 50), which Plaintiff

opposes (Doc. 55). Defendant has filed a Reply. (Doc. 58).

     The parties disagree whether there are genuine disputes over the material facts underlying

Plaintiff's claims—*i.e.*, the reasons for her termination and the existence of a hostile work

environment. I do not address that disagreement.

---

[1] Plaintiff originally brought claims under the Family Medical Leave Act, 29 U.S.C. § 2615
(a)(1) and (2). (Doc. 1, ¶¶ 42–53). Her opposition brief does not contest summary judgment on
the FMLA claims. Instead, Plaintiff includes a request that I dismiss those claims. (Doc 55, pgID
1679). I do so with prejudice. *See Grover ex rel. Grover v. Eli Lilly & Co.*, 33 F.3d 716, 719 (6th
Cir. 1994).

That is so because, for the reasons that follow, I conclude that there is no cognizable factual dispute that the Plaintiff contractually agreed to a shortened six-month limitations period. Plaintiff failed to meet this deadline.

Accordingly, I grant Defendant's Motion for Summary Judgment.

## Background

Defendant Time Staffing—along with its holding company, Doepker Group[2]—are Ohio businesses wholly owned by its president and CEO, Defendant Jeffrey Doepker. (Doc. 24-1, 15:6–16:8). Time Staffing is a staffing agency that helps find temporary employees for its business and manufacturing clients. (*Id.* 16:16–17:11).

On February 22, 2017, Time Staffing hired Plaintiff Kimberly Smith (formerly, Kimberly Chance) as a part-time temporary receptionist in their Fremont, Ohio office. (*See* Doc. 27-1, 66:1–67:20). Then in May 2017, Time Staffing offered, and Plaintiff accepted, a full-time position as an administrative assistance at the same office. (Doc. 47-1, pgID 1086). As stated in Time Staffing's offer letter, which Plaintiff signed, the offer was contingent upon Plaintiff's "acknowledgement of [Time Staffing's] policies outlined in the Staff Policy Manual." (*Id.*)

Toward the end of the Staff Policy Manual, there is a one-page "Employee Acknowledgement of Receipt" form (Docs. 27-1, 27-2). Several sections are relevant here:

> This Staff Policy Manual is an important document intended to help you become acquainted with the Company.
>
> [. . .]

---

[2] Doepker Group is Time Staffing's parent company within its family tree. It also provides payroll for Time Staffing's temporary associates. (Doc. 24-1, 16:6–8; Doc. 25-1, 43:15–16). Because any difference in the corporate forms is not relevant to this Motion, I will simply refer to both or either as "Time Staffing."

> I have received the manual, and I understand that it is my responsibility to read and comply with the policies contained in this manual and any revisions made to it.
>
> [. . .]
>
> In consideration of my employment or continued employment, I agree that any claim or lawsuit arising out of my employment with, or any application for employment with the Company or any of its subsidiaries must be filed no more than six months after the date of the employment action that is the subject to the claim or lawsuit. While I understand that the statute of limitations for claims arising out of an employment action may be longer than six months, I agree to be bound by the six-month period of limitations set forth herein, and **I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY AND ANY REMEDY, FINANCIAL OR OTHERWISE, THAT MAY RELATE TO ANY CLAIM NOT FILED IN ACCORDANCE WITH THIS TIME LIMITATION.** Should a court determine in some future lawsuit that this provision allows an unreasonably short period of time to commence a lawsuit, the court shall enforce this provision as far as possible and shall declare the lawsuit barred unless it was brought within the minimum reasonable time within which the suit should have been commenced.

(Doc. 27-3, pgID 693).

Plaintiff signed this Acknowledgement on three separate occasions. (Doc. 27-1, 86:8–11). Each of the three Acknowledgments represented a new version of the Policy Manual, revised in August 2018, January 2019, and March 2019, respectively. The above all-capital, bold-faced, and underlined section appears exactly that way in the January 2019 and March 2019 versions. (Doc. 27-3, pgID 693–94).  The August 2019 version is in all capitals, but it is not bold-faced or underlined. (*Id.*, pgID 695). This is the only emphasized portion of the Acknowledgments.

In her deposition, Plaintiff testified that the signatures on the August 2018 and January 2019 versions were "definitely" hers. (Doc. 27-1, 86:11–17). She testified that her signature on the March 2019 version looked "iffy" and slightly different from her normal signature. (*Id.* at 86:16–24). But Plaintiff still agreed that she wrote her printed name immediately next to the March 2019 signature. (*Id.* at 86:11–17 87:7).

3

Though she acknowledged three times in writing that she received the Policy Manual, Plaintiff testified that she does not recall reading it. (*Id.* at 92:11–19).

During the course of her employment, Plaintiff alleged and testified that Defendant Doepker repeatedly and regularly harassed her due to her race and gender. (Doc. 1, ¶¶ 22–32; Doc. 27-1, 130:6–171:8). Defendants terminated Plaintiff on February 14, 2020. (Doc. 27-1, 42:8–14).

On March 23, 2020, Plaintiff's attorney sent a letter to Defendants regarding potential claims against them regarding their harassment and termination of Plaintiff. (Doc. 45-4). At the end of the three-page letter, Plaintiff's counsel asked, "to the extent you contend that Ms. Smith has entered into any agreement that could limit her rights, be that an agreement to arbitrate, a severance agreement, or an agreement of any other stripe, we request that you forward a copy of the same to our immediate attention." (*Id.*, pgID 908).

Defendants' attorney sent a letter to Plaintiff's attorney on March 30, 2020. (Doc. 55-2). Defendants' letter acknowledged they received Plaintiff's prior letter, and Defendants asked Plaintiff to direct any further communications to their counsel. (*Id.*). It did not otherwise respond to Plaintiff's request for any copies of any agreements. There is no other evidence of pre-litigation communications between Plaintiff and Defendants.

Plaintiff filed this lawsuit on September 3, 2020, about six and a half months after her termination. (Doc. 1). Plaintiff claims Defendants harassed her and discriminated against her on the basis of her race and gender, in violation of Ohio law. (*Id.* ¶¶ 54–70).

I do not reach the substance of these allegations and their supporting evidence, however. Plaintiff has failed to show that her claims are not time-barred by the six-month limitations period to which she agreed.

## **Legal Standard**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323. The movant need not produce evidence to show this absence; instead, it may discharge its burden by pointing out to me an absence of evidence to support the nonmovant's case. *Id.* at 325.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and submit admissible evidence supporting its position. *Celotex, supra,* 477 U.S. at 324.

I accept the nonmovant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But the nonmovant must show that there is sufficient evidence that would allow a jury to find in her favor. *Anderson, supra*, 477 U.S. at 249.

"If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50 (cleaned up). "The mere existence of a scintilla of evidence" in plaintiff's favor is insufficient. *Id.* at 252. My task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 481 (6th Cir. 2020).

## Discussion

Plaintiff contends that the contractually shortened limitations period does not preclude her from maintaining her lawsuit. *First*, she appears to be contending, somewhat *sub silentio*, that her signatures on the Acknowledgements were not binding because she could not recall reading the Policy Manual. *Second*, and more forcefully, she argues that the equitable tolling stopped the running of the shortened period before is six-month contractual limit. *Third*, she argues that regardless, I should exercise my equitable powers to estop Defendants from raising their limitations defenses.

I find no merit in any of these contentions.

### 1.  Agreement to the Six-Month Limitations Period

Plaintiff wants a free pass around the Acknowledgement's six-month limitations barrier by claiming she did not see it or that she does not recall seeing it. *Thompson v. Fresh Prods., LLC*, 2019 WL 13078700, at *2 (N.D. Ohio, Dec. 12, 2019) (Zouhary, J.), *aff'd*, 985 F.3d 509, 521 (6th Cir. 2021). ("[B]ecause the six-month limitation period is reasonable, the contractual limitation is enforceable."). This claim of actual ("I didn't read it") or constructive ("I don't recall reading it") ignorance does not, as a matter of law, result in a triable issue of disputed fact. It was there in plain sight—bold, underlined, and in all capital letters.

More importantly, her three-times repeated signature belies her testimony. This is because the function of a signature on a contract is,[3] and has been for centuries,[4] to bind the signatory to the contract's terms.

---

[3] *Thompson*, 2019 WL 13078700, at *3.

[4] *Signature*, 22 Williston on Contracts § 60:17 (4th ed.) ("A person is not liable on an instrument unless the person signed the instrument[.]"); *People's Bank & Sav. Co. v. Cereguti*, 4 Ohio App. 1 (1st Dist. 1914), *aff'd*, 92 Ohio St. 525, 112 N.E. 1086 (1915)("[T]he depositor by signing the signature card thereby assents to the rules and regulations of the company. While the proof fails

In *Thompson*, the plaintiff argued she should not be bound by the statute of limitations in the acknowledgement because allegedly she failed to read it, which is essentially the same argument Plaintiff here makes.  2019 WL 13078700, at *3. The district court rejected this argument, citing *Mannix v. Cty. of Monroe*, 348 F.3d 526, 533 (6th Cir. 2003): "[Those] who sign[] a contract cannot seek to avoid it on the basis that [they] did not read it or that [they] supposed it was different in its terms." *Id.* Plaintiff's failure to read the Acknowledgement, and/or her failed recollection of signing the Acknowledgement are immaterial.  The fact remains Plaintiff signed three separate Acknowledgments, and she admitted such in her deposition.

Plaintiff also contends she and another employee did not recall signing the Acknowledgment and questioned whether the employee handbook, which contains a blank copy of the Acknowledgment, was in fact on the company's intranet.  This argument is a red herring and conflates the issue before me.  The salient issue is whether Plaintiff signed the Acknowledgement, which contained the statute of limitations agreement, thereby binding her to the terms of the Acknowledgement.  Whether the employee handbook also contained the Acknowledgment or where the handbook was made available by Defendants is completely irrelevant. Plaintiff signed the agreement.

Plaintiff's argument that she should be excused for the late filing of her lawsuit because Defendants did not provide her copies of her signed Acknowledgements upon her counsel's request is specious. Defendants were under no legal obligation to help her on her way to the court clerk's office, to file the lawsuit against them. Plaintiff identifies no such duty.

---

to show that all of these rules and regulations were made known to or explained to him, he would no doubt be held to be bound by them so far as would an ordinary depositor who could read and write."); *see also Weightman v. Caldwell*, 17 U.S. 85, 94, 4 Wheat. 85, 94 (1819) (discussing sufficiency, for the statute of frauds, of a signature on a contract).

A stern rule, *see* Williston, *supra,* note 4, the law favors upholding and enforcing contracts where it appears, as the one here does, the parties have duly endorsed and assented to its terms. Courts are understandably reluctant to undo such contracts except in compelling cases.

Thus, Plaintiff must show that compelling circumstances beyond her control barred the courthouse doors. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000).

There is nothing unusual, much less compelling, about the circumstances here. Whether Plaintiff read the Acknowledgement or not (and she would not be the first person to sign something without reading) does not matter. A reasonable jury would, based on the evidence of record, have to find that the parties' contract was enforceable—*i.e.*, that Plaintiff signed on the dotted line and that the Defendant then gave her a job conditioned on that agreement. Each subsequent signature and acknowledgement kept her on the job until Defendant terminated her.

## 2.   Equitable Tolling

Plaintiff argues that Defendants misled her as she was about to head for the courthouse to file her lawsuit. So she turns to the doctrine of equitable tolling to get her back on the open road. It is her burden of showing that her tardy arrival resulted from circumstances beyond her control.

Plaintiff must prove her entitlement to equitable tolling, that circumstances beyond her control caused her to miss the deadline. *Zapone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017). The Sixth Circuit considers five factors: "(1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Id.*

8

Applying the above factors to the present case, Plaintiff's arguments for equitable tolling fail.  The record clearly establishes Plaintiff did not lack notice of the filing deadline or lack constructive knowledge of the deadline.  Plaintiff had *actual* notice as she signed three separate agreements apprising her of her filing obligation.

 Plaintiff did not diligently pursue her rights; rather, she slept on them.  Clearly Plaintiff's counsel was concerned about the existence of an agreement containing a shortened statute of limitations. Otherwise, he would not have sent the March 23, 2020, letter requesting such an agreement.  Knowing Plaintiff was laid off on February 14, 2020, and having received no response to the March 23, 2020, letter, due diligence would dictate filing the lawsuit within six months of the layoff out of an abundance of caution.

Instead, Plaintiff filed her lawsuit about two weeks late. Indisputably, there is prejudice to Defendants by permitting equitable tolling because Defendants have a viable and recognized statute of limitations defense.  Finally, Plaintiff has articulated no reasonable explanation for being ignorant of the filing deadline.  The fact that she signed the Acknowledgement three times undermines any contention that she was ignorant of her obligation to file a lawsuit within six months of her layoff.

Nothing beyond Plaintiff's control kept her from missing the six-month deadline. After all, she had a lawyer. That Plaintiff engaged him to protect her legal rights was her decision, not Defendants'. Basic principles of contract law establish that Plaintiff had actual notice of the limitations period through her assent thrice over. It matters not that, when the time came to act, she may have forgotten it.

Though she may have diligently retained a lawyer, it is her counsel—not Defendant Doepker—who became solely responsible for finding out whether limits (*i.e.*, a shortened

limitations period) or entire barriers (*i.e.,* a mandatory arbitration clause) blocked her access to the courthouse. Plaintiff's attorney had taken over. He was her agent, and whatever he did or left undone was attributable to her.

It was not attributable to Defendant Doepker or anyone else at Times Staffing. In responding to the attorney's March 23d letter, Defendants did more, not less, than the law required. Indeed, as Defendants' reply brief points out, Plaintiff has failed to cite any case law that imposed any burden whatsoever on Defendants to respond to her letter at all. (Doc. 58, pgID 1712–13). Defendants and their counsel had no duty to protect Plaintiff's legal rights and remedies.

### 3.  Equitable Estoppel

Plaintiff's appeal to the doctrine of equitable estoppel is unavailing. She has not shown that any bad faith on Defendants' part induced her—or her lawyer—to rely on the longer limitations period that the General Assembly had provided, as opposed to the six-month period in the Policy Manual Acknowledgment. *See Hantz Fin. Servs., Inc. v. Am. Int'l Specialty Lines Ins. Co*., 664 Fed. App'x 452, 460 (6th Cir. 2016) ("Although [defendant] spent nearly three years investigating [plaintiff's] claims and requested [plaintiff's] cooperation throughout the process, it never implied it would waive the contractual limitations provision, nor did it suggest that it would cover the losses.").

Deciding not to disclose information, even where it may somehow help someone else, is not bad faith unless there is a duty to do so. *See State v. Williams*, 2016-Ohio-8123, ¶ 10 (1st Dist. Ct. App) (discussing bad faith where the state in a criminal case had a duty to disclose information but did not). Here there was no such duty, contractual or otherwise.

10

There is nothing in the record that provides a basis for believing that Plaintiff could, were I to deny Defendants' Motion, meet her burden of proof before a jury. She has provided no evidence, as is her burden, to show: "(1) that the defendant made a factual misrepresentation; (2) that it is misleading; (3) [that it induced] actual reliance which is reasonable and in good faith; and (4) [that the reliance caused] detriment to the[] relying party." *Est. of Greenawalt v. Est. of Freed*, 2018-Ohio-2603, ¶ 35 (10th Dist. Ct. App). A showing of "actual or constructive fraud" by Defendants is necessary. *State ex rel. Ryan v. State Tchrs. Ret. Sys.*, 643 N.E.2d 1122, 1128 (Ohio 1994)

The record contains no evidence Defendants "induced" Plaintiff to believe they would not enforce the contractual limitations period. Contrary to Plaintiff's contention, Defendants' counsel's March 30, 2020, letter to Plaintiff's counsel acknowledging receipt of counsel's March 23, 2020, letter can hardly be construed as a communication that Defendants would not enforce the limitations period. The letter did not make any factual misrepresentation—actual or implied.

Defendant did nothing *affirmative* to mislead Plaintiff or her attorney. *See Helman v. EPL Prolong, Inc.*, 743 N.E.2d 484, 495 (Ohio 7th Dist. Ct. App. 2000) ("[I]n the context of a statute-of-limitations defense, a plaintiff must show either 'an affirmative statement that the statutory period to bring an action was larger than it actually was' or 'promises to make a better settlement of the claim if plaintiff did not bring the threatened suit' or 'similar representations or conduct' on defendant's part.") (quoting *Cerney v. Norfolk & W. Ry. Co.*, 662 N.E.2d 827, 830 (Ohio 1995)). That is the standard that Plaintiff must meet to maintain this suit. She has not done so.

11

Therefore, Defendants are not estopped from raising their limitations defense. Plaintiff's lawsuit is time-barred.

## Conclusion

Summary judgment for the Defendants is appropriate. There is no genuine dispute as to the operative and admissible facts. Those facts conclusively show that a reasonable jury could not, after following the law and applying that law to the facts, find in Plaintiff's favor regarding the statute of limitations.

Defendant Doepker's conduct, as alleged and discussed by Plaintiff, was truly abhorrent. And for six months after February 14, 2020, the courthouse doors were open to Plaintiff to bring her claims. After that, the limitations barrier went up. Plaintiff has no right, in either law or equity, to have me take it down and let her proceed.

It is, therefore,

ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 50) be, and the same hereby is, granted.

2. Counts III, IV, and V of Plaintiff's Complaint (Doc. 1) be, and the same hereby are, dismissed with prejudice.

3. Counts I and II of Plaintiff's Complaint (Doc. 1) be, and the same hereby are, dismissed, at Plaintiff's request and with prejudice.

SO ORDERED.

*/s/ James G. Carr*
Sr. U.S. District Judge